**MANNING CURTIS BRADSHAW
& BEDNAR LLC**
David C. Castleberry [11531]
dcastleberry@mc2b.com
136 East South Temple, Suite 1300
Salt Lake City, UT 84111
Telephone (801) 363-5678
Facsimile (801) 364-5678

*Attorneys for R. Wayne Klein, the Court-Appointed
Receiver of U.S. Ventures, LC, Winsome Investment
Trust, and the assets of Robert J. Andres and
Robert L. Holloway*

FILED
U.S. DISTRICT COURT

2014 SEP -2 P 2: 27

DISTRICT OF UTAH

DEPUTY CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>U.S. VENTURES LC, a Utah limited liability company, WINSOME INVESTMENT TRUST, an unincorporated Texas entity, ROBERT J. ANDRES and ROBERT L. HOLLOWAY,<br><br>Defendants. | [PROPOSED] **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER REGARDING CLAIM NO. 1145**<br><br>Case No. 2:11CV00099 BSJ<br><br>District Judge Bruce S. Jenkins |

The Court set hearings on February 21, 2014 and on May 20, 2014 to consider Claim No. 1145, which was submitted by Susan Johnson ("Johnson") to R. Wayne Klein (the "Receiver"), Receiver for US Ventures LC and Winsome Investment Trust ("Winsome"). The Receiver recommended denial of Johnson's claim because: (1) her claim form was submitted untimely, (2) she was involved in promoting the Winsome fraud, (3) the claim form submitted by Johnson

{00768886.DOCX /}

contained false statements under oath, and (4) allowing new claims to be recognized at this late date would cause delay and increase costs to the receivership estate.

After carefully considering the claim submitted, argument and evidence submitted by Johnson in support of the claim, and argument and evidence submitted by the Receiver in opposition to the claim, the Court hereby denies the claim as set forth in the findings of fact, conclusions of law, and order below.

## **BACKGROUND**

The deadline for submission of claims for review by the Receiver was July 31, 2012. *See* Order Approving Proof of Claim Form and Claim Review Process (the "Order"), Doc. No. 157. On June 24, 2013, Johnson sent a claim form to counsel for the Receiver, which was forwarded to the Receiver that same day[1]. On June 24, 2013, the Receiver notified Johnson that her claim was for being late, for not deducting all payments she had received, and because Johnson had acted as a third-party marketer.

On January 21, 2014, Johnson filed a motion with the Court seeking approval of her claim. *See* Investor Susan Johnson's Motion for Order Approving Submission of Claim No. 1145 After the Claims Bar Date and Supporting Memorandum, Doc. No. 318. The Receiver filed his opposition on February 7, 2014. *See* Receiver's Opposition to Susan Johnson's Motion for Order Approving Claim for Johnson; Doc. No. 323. Johnson submitted her reply on February 19, 2014. *See* Investor Susan Johnson's Reply to Receiver's Opposition to her Motion for Order Approving Submission of Claim No. 1145 After the Claims Bar Date, Doc. No. 326. On February 11, 2014, the Court noticed a Status Report and Scheduling Conference with

---

[1] Johnson's claim form is dated May 6, 2013, but the Receiver had no record of receiving the claim form at that time. In any event, the claim form was submitted to the Receiver on a date substantially after the claims deadline and whether the claim form was submitted in May or June 2013 does not affect the Court's conclusions in this matter.

respect to Susan Johnson's claim. Notice of Hearing, Doc. No. 325. At the February 21, 2014 hearing, the Court instructed Johnson to provide, among other things, bank documents showing the source of the funds she invested with Winsome. In response, Johnson provided some documents and information to support her claim following the February 21, 2014 hearing. On March 10, 2014, the Receiver filed a request that the Court to set a hearing to allow the Receiver to obtain the information he was seeking from Johnson with respect to her late-filed claim. *See* Conditional Request for Evidentiary Hearing re Susan Johnson's Motion for Order Approving Claim, Doc. No. 332. Johnson opposed this request. *See* Investor Susan Johnson's Objections to Receiver's Conditional Request for Evidentiary Hearing Regarding Her Motion for Order Approving Claim No. 1145, Doc. No. 333.

The Court held an additional hearing on May 20, 2014. Following that hearing, the Court issued an order requiring Johnson to provide (1) her investment account and bank account records showing the source of Johnson's investment funds, (2) her Winsome account statements, and (3) information regarding Johnson's notice of the claims process. Order re Production of Supplemental Information in Support of Motion on Claim No. 1145, Doc. No. 350.

Johnson supplied supplemental information to the Court and the Receiver on June 9, 2014. Supplemental Information in Support of Susan Johnson's Motion for Order Approving Submission of Claim No. 1145 After the Claims Bar Date, Doc. No. 359. On July 10, 2014, the Receiver filed his Response to Supplemental Information Provided by Susan Johnson re: Motion for Order Approving Claim for Johnson, Doc. No. 375.

# FINDINGS OF FACT

## The Claims Process, Bar Date

1. On May 22, 2012, the Court approved commencement of a claims process to identify allowable claimants for assets of the Winsome receivership and to determine the amount of allowable claim for each allowable claimant. *See* Order Approving Proof of Claim Form and Claim Review Process (the "Order"), Doc. No. 157.

2. In connection with approval of the claims process, the Court approved the claim form, instructions to the claim form ("Instructions"), the guidelines to be used in evaluating the claims submitted ("Guidelines"), the form and method of giving notice to potential claimants, and a bar date of July 31, 2012 for submission of claims. *See id.*; *see also* Declaration of Receiver R. Wayne Klein in Opposition to Susan Johnson's Motion for Order Approving Claim dated February 6, 2014, ¶ 3, Doc. No. 323-1.

3. On May 22, 2012, the Receiver sent notice of the commencement of the claims process to all potential claimants he was able to identify. *Id.* ¶ 4.

4. The notice from the Receiver was provided via email for persons for whom the Receiver had email addresses. *Id.* ¶ 5.

5. The email notice included a link to a cover letter from the Receiver ("Cover Letter"), the claim form, Instructions, and Guidelines. *Id.* ¶ 6.

6. Notice of the claims process was sent to Johnson on May 22, 2012 via email to the email address: susanjohn374@hotmail.com. *Id.* ¶ 7.

7. Johnson has admitted that her email address is susanjohn374@hotmail.com, that it is the only email she has used since December 2005, and that it is still open. Declaration of Susan Johnson, Doc. No. 359-1 dated June 3, 2014, ¶ 52.

8. This email was sent to an address used by Susan Johnson in her dealings with Winsome, and the email was not returned as undeliverable. Klein Declaration dated February 6, 2014, Doc. No. 323-1, ¶ 8.

9. The Cover Letter, Instructions, and claim form all specifically warned that claims needed to be submitted by July 31, 2012 or they might be disallowed. *Id.* ¶ 10.

10. The Guidelines and Instructions also prominently warn that claims could be disallowed if they contained false information or if the claimant had been involved in promoting the fraud scheme. *Id.* ¶ 11.

11. In addition, the Receiver posted notice of the claims process on the receivership website at http://www.kleinutah.com/index.php/receiverships/us-ventures. *Id.* ¶ 12.

12. Information on the website about the claims process was posted at the top of the website and remained in that prominent location until well after the bar date for submission of claims. *Id.* ¶ 13.

13. Moreover, the Receiver published notice of the claims process in the national newspaper *USA Today*, weekly for three weeks beginning May 29, 2012. *Id.* ¶ 14.

14. On November 8, 2013, the Receiver moved the Court to adopt a Plan of Distribution. Receiver's Motion Proposing Plan of Distribution and Memorandum in Support, Doc. No. 306.

15. On July 1, 2014, after considering objections to the Plan of Distribution, the Court entered an Order adopting the Receiver's Plan of Distribution. Order Granting Receiver's Motion Proposing Distribution, Doc. No. 367.

### Johnson's Claim Was Untimely

16. Johnson signed a claim form on May 6, 2013, which the Receiver received on June 24, 2013. Klein Declaration dated February 6, 2014, ¶ 15, Doc. No. 323-1.

17. The Receiver rejected Johnson's claim because her claim was untimely, because she was a third-party marketer who introduced another investor to the Winsome fraud and was entitled to receive commission based on the investments of another investor, and because she provided the Receiver with false and incomplete information. *Id.* ¶ 16.

18. On June 24, 2013, the Receiver sent Johnson a "Notice of Rejected Proof of Claim," which noted the late filing and other grounds for rejection. *Id.* ¶¶ 15, 16.

19. In the Notice of Rejected Proof of Claim, the Receiver notified Johnson that if she did not agree with the Receiver's decision denying her claim, she could seek relief with the Court. *Id.*

20. Johnson waited another seven months after receiving this rejection to seek relief with the Court concerning the Receiver's decision to deny her claim.

### Johnson Introduced Other Investors to the Winsome Fraud and Was Entitled to Receive Commissions from Winsome Based on Investments by Other Investors

21. Johnson was a sales intermediary between Winsome and investors Larry Koch and Beverly Darilek. *Id.* ¶ 17.

22. Koch and Darilek agreed to invest $100,000.00 with Winsome in August 2006 based on an investment agreement labeled "For Your Growth and Susan Johnson Joint Venture Agreement."[2] *Id.* ¶ 18.

---

[2] "For Your Growth" is a company operated by Johnson's sister, Connie Patterson. Patterson separately marketed Winsome to numerous other investors and Patterson received substantial payments from Winsome. On October 31, 2013, Judge Waddoups granted judgment for the Receiver against Patterson in the amount of $1,966,417.00. *Klein v. Patterson*, 2:11-cv-723-CW, Doc. No. 102.

{00768886.DOCX /}

23. Under that investment agreement, Koch and Darilek were entitled to receive only 70% of the anticipated profits of the business, and Johnson was entitled to 10% of the profits. *Id.*

24. In the joint venture agreement signed by Johnson, she claims to have knowledge of automated trading and that she would monitor the investments on behalf of Koch and Darilek. *Id.*

25. Koch and Darilek affirmed to the Receiver during the claims process that Johnson solicited their investment. *Id.* ¶ 19.

26. Between November 21, 2006 and January 5, 2007, Winsome sent four $1,000 payments to Johnson. Declaration of R. Wayne Klein dated July 10, 2014, Doc. No. 375-1, ¶ 5.

27. These payments were sent on a regular basis, with payments occurring on the 5th and the 21st of the months. *Id.* ¶ 6.

28. While Johnson states that she obtained a car loan in October 2006 and that she needed "extra money to make ends meet and pay my expenses at the time, including most notably the $771.74 car payments that first became due in November 2006," Declaration of Susan Johnson dated June 3, 2014, Doc. No. 359-1, ¶ 49, the evidence submitted does not support this assertion.

29. Rather the evidence supports the conclusion that these regular payments to Johnson were commissions based on the Koch and Darilek investments.

30. Winsome sent these payments to Johnson on the fifth and twenty-first of each month—the same day that Winsome sent out commission payments to Connie Patterson, a third party marketer who was also entitled to receive commissions from the Koch and Darilek investment. *See* Klein Declaration dated July 10, 2014, Doc. 375-1 ¶¶ 7,8.

31. The bank statements that Johnson provided in her submissions to the Court show that she did not need extra money to make ends meet and pay expenses.

32. Even with the car payments that Johnson made, her bank balances showed that the funds from Winsome were not needed to cover expenses.

33. The December 8, 2006 bank statement provided by Johnson to the Court show that the lowest balance in Johnson's account for the prior months was $3,242.10; her ending balance was $5,861.03. Bank Records attached as Exhibit B to Johnson's Declaration dated June 3, 2014, Doc No. 359-2.

34. Even without the two $1,000 payments from Winsome during the month ending December 8, 2006, Johnson's account never would have dropped below $1,242.10 and it would have ended at $3,861.03. *Id.*

35. The January 9, 2007 statement shows even less need for cash: the lowest balance was $4,583.88 and the ending balance was $22,908.59. *Id.*

36. The Court finds that these bank balances explain why Johnson cannot find any documentation showing that she requested the withdrawals; the most likely answer is that she did not request the withdrawals but Winsome sent them automatically as commissions on the supposed investment returns of Mr. & Mrs. Koch.

37. The Receiver found partial account statements that Winsome created for the separate investment account of Johnson during most of this time period. Klein Declaration dated July 10, 2014, Doc No. 375-1,. ¶ 9.

38. Those partial account statements show that there was no principal reduction in the account of Johnson relating to the $1,000 payments to Johnson on November 21, 2006 or December 21, 2006. *Id.* ¶ 9.

## Johnson's Claim Form Contains Misstatements

39. When Johnson signed her claim form with a date of May 6, 2013, she affirmed: "I/we do [hereby] declare under penalty of perjury that the above information is correct to the best of my/our knowledge and belief." *See* Exhibit A to Declaration of Susan Johnson dated January 20, 2014, Doc. No. 318-2.

40. The Guidelines warn claimants that their claims could be denied if the claim form contained false information, specifically including the failure to list distributions received. *See* Guidelines ¶ 8, attached as Exhibit 1 to the Klein Declaration, dated February 6, 2014, Doc. No. 323-1.

41. Similarly, the Instructions warn that if the amount claimed was based on false or misleading information, the claim could be denied. *See* Instructions for Proof of Claim Form, ¶ 2, attached as Exhibit 1 to the Klein Declaration, dated February 6, 2014, Doc. No. 323-1.

42. Johnson's claim form only acknowledged receiving $4,000.00 in distribution payments from Winsome, *see* Exhibit A to Declaration of Susan Johnson dated January 20, 2014, Doc. No. 318-2, but this information is incorrect.

43. Johnson received an additional $20,000.00 in distributions directly from Winsome that were not listed on her claim form. Johnson later acknowledged receipt of these additional funds.

44. In addition, because the Court required Johnson to produce copies of her bank records to show the source of funds she sent to Winsome, Johnson was also forced to reveal that she received a further $107,342.94 from her sister, Connie Patterson, who was a third-party marketer for Winsome.

45. With the information provided by these new records, the Receiver was able to trace the source of the $107,342.94 that Johnson received from Patterson, and determined that a cash withdrawal from Winsome was used to purchase a cashier's check, that the cashier's check was payable to Connie Patterson, and that the $107,342.94 from Winsome ended up being paid to Johnson. Klein Declaration dated July 10, 2014, Doc No. 323-1, ¶¶ 13-14.

46. A second significant false statement by Johnson in her claim form was her response to Question A.4. Johnson answered "no" to the question: "Were you promised or did you receive compensation based on the amounts that others invested?" *Id.* ¶ 26.

47. As shown in the Koch/Darilek Joint Venture Investment Agreement, Johnson was promised 10% of trading profits from the Koch/Darilek investment. *Id.* ¶ 27.

48. Johnson's negative response to this question is a second demonstrably false statement made under oath.

### Allowing Johnson's Claim Would Cause Delay and Increase Costs

49. The Receiver has been contacted by individuals who claim to be investors, who have not filed claims before the bar date, and who want to know how to receive a portion of the proceeds the Receiver has recovered for the benefit of the investors. *Id.* ¶ 28.

50. If Johnson's claim is allowed, other investors who have not filed timely claims would be expected also to seek to have their claims allowed.

51. If third-party marketers, like Johnson, are deemed to not be disqualified from receiving distributions of funds recovered by the Receivership Estate, it is reasonable to expect that many additional claims would be submitted by insiders and other marketers.

52. Reopening the claims process to allow late-filed claims and claims by insiders would be expected to increase the number and amount of claims.

53. If the relief requested by Johnson were granted, the Receiver likely would be required to spend additional time evaluating new claims, formulating new recommendations to the Court identifying the allowable claimants, and calculating the percentage recovery for timely and newly-submitted claims.

54. If additional investors were permitted to submit new claims after the bar date, the question arises whether they should also be given an opportunity to object to the claims distribution methodology recommended by the Receiver.

## CONCLUSIONS OF LAW

### Johnson's Claim Was Properly Denied Because It Was Filed Late

1. Courts recognize the purpose of setting claim deadlines and the importance of denying claims submitted after the bar date.

2. In *SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986), investors appealed the decision of a district court denying their claims filed after the bar date, and, on appeal, the *Hardy* court affirmed the ruling of the district court.

3. The *Hardy* court reasoned: "the district court's decision to establish deadlines for filing claims, and to bar untimely claims, is reasonable in light of the complexity of the receivership and the procedure employed to notify potential claimants." *Id.* at 1039.

4. Further, in a case decided last year, *Bendall v. Lancer Management Group, LLC*, 523 Fed.Appx. 554 (11th Cir. 2013), two individuals attempted to submit claims on a receivership estate after the bar date established by the district court. The district court in *Bendall* denied these claims, concluding that the individuals had "failed to file a proof of claim, contingent or otherwise, by the claims bar date." *Id.* at 556.

5. On appeal, the ruling of the district court was upheld, and the *Bendall* court concluded that the claims at issue in that case were appropriately barred as untimely by the district court's case management order setting the claims bar date. *Id.* at 557.

6. The *Bendall* court also emphasized that a trial court has broad discretion in an equity receivership to fashion rules and guidelines to govern about the operation of the receivership. *Id.* (citing *S.E.C. v. Safety Fin. Serv., Inc. v. Ark. Loan & Thrift Corp.*, 674 F.2d 368, 373 (5th Cir. 1982)); *see also S.E.C. v. Vescor Capital Corp.* 599 F.3d 1189, 1194 (10th 2010) ("It is generally recognized that the district court has broad powers and wide discretion to determine relief in an equity receivership. This discretion derives from the inherent powers of an equity court to fashion relief.") (citations and internal quotations omitted).

7. In this case, the deadline for the submission of claims for review by the Receiver was July 31, 2012.

8. Johnson submitted her claim nearly one year after the claim deadline on June 24, 2014.

9. Johnson did not file a motion with the Court seeking to have her claim allowed until January 21, 2014, nearly seven months after her claim was denied and two months after the Receiver had recommended a plan of distribution to the Court.

10. Therefore, Johnson's claim was properly denied by the Receiver based on this independent reason.

### Johnson's Claim Was Properly Denied Because She Introduced Investors to the Winsome Fraud and Was Entitled to Receive Commissions Based on the Investments of Other Investors

11. The Guidelines and Instructions, which were approved by the Court, warned that claims could be disallowed if the claimant had been involved in promoting the fraud scheme.

12. Johnson was a sales intermediary between Winsome and investors Larry Koch and Beverly Darilek.

13. According to an agreement signed by Johnson, she was entitled to receive 10% of the profits from the Larry Koch and Beverly Darilek investments, and between November 21, 2006 and January 5, 2007, Winsome sent four $1,000 payments to Johnson.

14. These payments were sent on a regular basis, with payments occurring on the 5th and the 21st of the months.

15. The evidence supports the conclusion that Johnson received these four payments based on her role in procuring the investment of Larry Koch and Beverly Darilek from Winsome.

### Johnson's Claim Was Properly Denied Because She Made Material Misstatements Under Oath in Her Claim Form

16. The Guidelines and Instructions prominently warn that claims could be disallowed if they contained false information.

17. Insisting on this condition was especially critical in this case since such a large percentage of investors invested through, or received distributions from, third party marketers.

18. As a result, the Guidelines and Instructions placed special emphasis on the importance of claimants accurately acknowledging all payments they received, and explained that inaccurate claims could be rejected.

19. When Johnson signed her claim form on May 6, 2013, she affirmed: "I/we do [hereby] declare under penalty of perjury that the above information is correct to the best of my/our knowledge and belief."

20. Johnson's claim form only acknowledged receiving $4,000.00 in distribution payments from Winsome.

21. Johnson received an additional $20,000.00 in distributions that were not listed on her claim form.

22. After Johnson produced copies of her bank records to show the source of funds she sent to Winsome as requested by the Court, Johnson revealed that she received a further $107,342.94 from her sister, Connie Patterson, who also was a third-party marketer for Winsome.

23. The $107,342.94 has been traced by the Receiver to a transfer made from Winsome to Connie Patterson; however, this $107,342.94 was never mentioned in Johnson's claim form.

24. Another significant false statement by Johnson in her claim form was her response to Question A.4. Johnson answered "no" to the question: "Were you promised or did you receive compensation based on the amounts that others invested?"

25. As shown in the Koch/Darilek Joint Venture Investment Agreement, Johnson was promised 10% of trading profits from the Koch/Darilek investment.

26. Thus, Johnson's claim form contained material false statements under oath.

### Johnson's Claim Was Properly Denied Because Allowing Her Late-Filed Claim Would Cause Delays and Increased Costs

27. If Johnson's untimely claim is allowed, other investors who have not filed timely claims would also be expected to seek to have their claims allowed.

28. If third-party marketers, like Johnson, are deemed to not be disqualified from receiving distributions of funds recovered by the Receivership Estate, many additional claims would be expected to be submitted by insiders and other marketers.

29. Reopening the claims process to allow late-filed claims and claims by insiders would substantially delay any future distribution of funds and would likely increase the number and amount of claims.

30. Accordingly, Johnson's late-filed claim was properly denied because she was a third-party marketer, because her claim form contained false statements, and because allowing her claim at this late date would cause delays and increase costs to the administration of the receivership estate.

## ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, the Court finds that Johnson's claim was properly denied by the Receiver. As a result, and for good cause appearing, the Court orders that Claim No. 1145 submitted by Johnson in the amount of $321,642 be denied.

DATED this 2nd day of Sept. 2014.

BY THE COURT:

Honorable Bruce S. Jenkins
District Court Judge

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing **[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER REGARDING CLAIM NO. 1145** to be served in the method indicated below to the following individuals in this action this ___ day of August, 2014.

| | |
|---|---|
| ___ VIA FACSIMILE | Sara E. Bouley |
| ___ VIA HAND DELIVERY | Action Law |
| ___ VIA U.S. MAIL | 2825 East Cottonwood Pkwy, #500 |
| ___ VIA FEDERAL EXPRESS | Salt Lake City, UT 84121 |
| _x_ VIA EMAIL | sara@actionlawutah.com |
| ___ VIA ECF | Attorneys for Susan Johnson |

| | |
|---|---|
| ___ VIA FACSIMILE | R. Wayne Klein |
| ___ VIA HAND DELIVERY | Klein & Associates |
| ___ VIA U.S. MAIL | 10 Exchange Place, Suite 502 |
| ___ VIA FEDERAL EXPRESS | Salt Lake City, UT 84111 |
| _x_ VIA EMAIL | |
| ___ VIA ECF | |

/s/ Melissa Aguilar

_____